UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ANDRE CALIX,

               Plaintiff,

   -against-

*Lieutenant* THOMAS POPE,

               Defendant.

**MEMORANDUM AND ORDER**

18-CV-3980 (RPK) (PK)
19-CV-6685 (RPK) (PK)

-------------------------------------------------------x

ANDRE CALIX,

               Plaintiff,

   -against-

UNITED STATES OF AMERICA,

               Defendant.

-------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

      The Government moves for partial reconsideration of this Court's September 28, 2022 Order granting in part and denying in part defendants' motion for summary judgment. For the reasons that follow, the motion for reconsideration is granted and summary judgment is granted to defendants in full.

## BACKGROUND

      The following facts, taken from the parties' Rule 56.1 statements, depositions, and evidentiary filings, are uncontradicted by other evidence unless noted.

1

A.     **Factual Background**

On May 22, 2018, plaintiff was housed with a cellmate ("Inmate A") at the Metropolitan Detention Center ("MDC") in Brooklyn, New York. Consolidated R. 56.1 Statement ¶ 2 ("R. 56.1 Statement") (Dkt. #125-1).[1] On that date, without warning or provocation, Inmate A threw hot water on plaintiff. *Id*. at ¶¶ 3–4. Plaintiff described the incident as "a surprise." *Id*. at ¶ 4; *see* Decl. of Matthew J. Modafferi, Ex. C 49:10–15 ("Calix Dep.") (Dkt. #123-5). Inmate A had only been at the MDC for about a week and, until the assault, plaintiff and Inmate A had never fought, quarreled, or threatened each other. R. 56.1 Statement at ¶¶ 2, 7–8.

Neither inmate was assigned a substantially higher security-risk score than the other. *Compare* Decl. of Matthew J. Modafferi, Ex. D (Dkt. #126-1) (Inmate A: risk of violence = 20; history of violence = minor > 10 years; security level = medium), *with* Decl. of Matthew J. Modafferi, Ex. E (Dkt. #126-2) (plaintiff: risk of violence = 22; history of violence = minor > 10 years; security level = medium). And Inmate A had no prior disciplinary record with the BOP. R. 56.1 Statement ¶ 12.

At the time of the attack, though, Inmate A was under investigation for misconduct at his previous place of incarceration, Federal Medical Center ("FMC") Devens. *Id.* at ¶ 17. On April 20, 2018, BOP staff had observed Inmate A and his cellmate ("Inmate V") arguing and "in a fighting stance." Decl. of Matthew J. Modafferi, Ex. M 2 ("Investigative Report") (Dkt. #126-6); *see* R. 56.1 Statement ¶ 18. Corrections officers separated the men, and then BOP staff reviewed

---

[1] The filings associated with the cross-motions for summary judgment in the consolidated cases, *Calix v. Pope* and *Calix v. United States* are identical. *Compare Calix v. Pope*, No. 18-CV-3980 (RPK) (PK) (E.D.N.Y.) (Dkts. #122–26), *with Calix v. United States*, No. 19-CV-6685 (RPK) (PK) (E.D.N.Y.) (Dkts. #63–67). Unless otherwise indicated, all documents are referred to by the docket numbers assigned in *Calix v. Pope*.

   Because the consolidated Rule 56.1 statement omits paragraph numbering, the paragraph numbers stated in this order refer to the "facts" identified in the Rule 56.1 statement. Thus, "R. 56.1 Statement ¶ 1" refers to "Defendants' Undisputed Fact No. 1," "R. 56.1 Statement ¶ 2" refers to "Defendants' Undisputed Fact No. 2," and so forth.

2

a video recording that showed the inmates "throwing punches at each other." Investigative Report 5.

Inmate A and Inmate V were separated and placed in the unit in FMC Devens called "N-1." R. 56.1 Statement ¶ 13. N-1 is not a "segregated housing unit" ("SHU"), *see* Second Decl. of Matthew J. Modafferi, Ex. A 77:12–25 ("Greer Dep.") (Dkt. #123-18); Second Decl. of Matthew J. Modafferi, Ex. B ¶¶ 15–16 ("Written Dep. Resp.") (Dkt. #123-19), but is rather a "secured mental health unit" with "more staff, psychology, and twenty-four-hour health services care," Greer Dep. 77:16–18, 264:04–08. Inmates may be placed in Unit N-1 pending an investigation or to separate them from other inmates after a fight. Written Dep. Resp. ¶ 18.

BOP staff investigated further by interviewing both men. When interviewed, Inmate V "reported he [had been] sexually assaulted with unwanted oral sex by" Inmate A when the two men were housed together. Investigative Report 2. Inmate V had not previously reported this allegation because he "didn't think it was a big deal." *Id.* at 3; R. 56.1 Statement ¶ 20. Inmate V also told officers that his fight with Inmate A had occurred when the two inmates "got into a heated argument" about an unspecified subject, after which Inmate A "punched him in the face." Investigative Report 3. Both Inmate A and Inmate V told officers that "the issue was over between the two but would prefer to not be in the same Unit." *Ibid*.

On May 11, 2018, while still investigating Inmate V's allegations against Inmate A, the BOP transferred Inmate A to the MDC. R. 56.1 Statement ¶ 21. There, Inmate A was placed in a general-population cell with plaintiff. *Ibid.*; *see* Calix Dep. 38:06–18.

On May 21—the day before the attack—Lt. Benjamin Greer contacted Lt. Thomas Pope at the MDC and asked him to interview Inmate A for the investigation. Decl. of Matthew J. Modafferi, Ex. L 2 ("Greer-Pope Email") (Dkt. #126-5). Lt. Greer also communicated to Lt. Pope

the substance of the allegations about Inmate A. *Ibid*. Lt. Pope conducted the interview and reported that Inmate A denied the sexual-assault allegation and had stated that he fought Inmate V "because [Inmate V] spit on" him. *Id* at 1. Inmate A did not mention plaintiff or express a desire to change cells. R. 56.1 Statement ¶ 32; *see* Greer-Pope Email 1. "[T]he interview of Inmate A did not raise any concern for Lieutenant Pope to believe that a future altercation would occur at MDC because," according to Lt. Pope, "prison is a violent place and there are a large number of the inmates in general population that have been involved in fights." R. 56.1 Statement ¶ 34.

The following day, before the investigation concluded, Inmate A threw hot water on plaintiff. *Id*. at ¶ 3. At that point, Inmate A was placed on administrative detention—"an administrative status which removes [the inmate] from the general population when necessary to ensure the safety, security, and orderly operation of correctional facilities, or protect the public." Second Decl. of Matthew J. Modafferi, Ex. C 3 ("BOP SHU Policies") (Dkt. #123-20); *see* Decl. of Matthew J. Modafferi, Ex. J 1 ("Housing Record") (Dkt. #126-4) (noting that Inmate A was placed on administrative detention status after attacking plaintiff, but not before).

Ultimately, Lt. Greer determined that the sexual-assault allegation against Inmate A was unsubstantiated due to a lack of credible evidence. Investigative Report 4–5. Lt. Greer also concluded that Inmate A should remain separated from Inmate V because they were seen "throwing punches" at each other, but that the fight was an "isolated incident with this one inmate," and so "[t]his issue appears to be localized to FMC Devens and should not affect [Inmate A's] ability to program elsewhere." *Id*. at 5; Greer Dep. 161:02–07. A captain signed off on the report on May 31, 2018, and a warden signed off on the report on June 8, 2018. Investigative Report 1.

B.   **Procedural History**

After the attack, plaintiff sued Lt. Pope and several other defendants. *See* Compl. (Dkt. #1). Then-presiding Judge Chen dismissed the defendants other than Lt. Pope. *See* July 20, 2018

4

Mem. & Order 5 (Dkt. #6); May 15, 2019 Minute Entry. Plaintiff then filed the operative amended complaint in his lawsuit against Lt. Pope, *see* Am. Compl. (Dkt. #24), and obtained counsel, *see* Notice of Appearance (Dkt. #114). In 2019, plaintiff also filed his related suit against the United States, *see* Compl., *Calix v. United States*, No. 19-CV-6684 (RPK) (PK) (E.D.N.Y.) (Dkt. #1) ("*Calix v. United States* Compl."), which was then consolidated with the action against Lt. Pope, *see* Jan. 14, 2020 Order.

Plaintiff's lawsuits raised two claims: an Eighth Amendment deliberate-indifference claim against Lt. Pope under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and a negligence claim against the United States under the FTCA, 28 U.S.C. § 2671 *et seq*. *See* Am. Compl.; *Calix v. United States* Compl. Defendants moved for summary judgment on both claims, and plaintiff moved for summary judgment on the FTCA claim. *See* Mot. for Summ. J. (Dkt. #122); Mem. in Supp. (Dkt. #124-1).

On September 28, 2022, this Court granted partial summary judgment to defendants. *See* Mem. & Order (Dkt. #129). The Court held that plaintiff failed to state a *Bivens* claim and that neither party was entitled to summary judgment on plaintiff's FTCA claim. The Court reasoned that there was a genuine factual dispute regarding the applicability of what is known as the discretionary-function exception, which precludes FTCA claims that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government." 28 U.S.C. § 2680(a). Because the discretionary-function exception is jurisdictional, the Court concluded, it could not address the merits of plaintiff's FTCA claim. *See All. For Env't Renewal, Inc. v. Pyramid Crossgates Co*., 436 F.3d 82, 85 (2d Cir. 2006) ("[A] district court must generally resolve material factual disputes

5

and establish that it has federal constitutional jurisdiction . . . before deciding a case on the merits.").

The Government requests reconsideration of the portion of the Court's Order declining to address the merits of plaintiff's FTCA claim. *See* Mot. for Reconsideration 1, *Calix v. United States*, No. 19-CV-6685 (RPK) (PK) (E.D.N.Y.) (Dkt. #71). The Government contends that "[i]n the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional," *Brownback v. King*, 141 S. Ct. 740, 749 (2021), and so "the Court can and should address the Government's merits-based argument as a basis to resolve whether the Court has jurisdiction," Mot. for Reconsideration 1. Plaintiff opposes the motion and requests, in the alternative, "leave to amend [the] complaint to add in a single paragraph which addresses the sixth element" of liability under the FTCA, that is, "that private actors can be liable to the claimant in accordance with the law of the place where the act or omission occurred—specifically pursuant to 42 U.S.C. § 1983 and New York State tort laws governing ordinary negligence." Mem. in Opp'n to Mot. for Reconsideration 4–5, *Calix v. United States*, No. 19-CV-6685 (RPK) (PK) (E.D.N.Y.) (Dkt. #72) (punctuation altered).

## STANDARD OF REVIEW

The decision to grant or deny reconsideration "is committed to the discretion of the district court." *Empresa Cubana del Tabaco v. Culbro Corp.*, 541 F.3d 476, 478 (2d Cir. 2008); *see Cangemi v. United States*, 13 F.4th 115, 129 n.10 (2d Cir. 2021). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "A motion for reconsideration should be granted only when

the defendant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a factual dispute is material if it "might affect the outcome of the suit under the governing law." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citation omitted).  In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all permissible factual inferences in favor of the non-movant.  *Ibid*.  A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

In assessing the record, I consider cited "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, [and] interrogatory answers." Fed. R. Civ. P. 56(c)(1)(A).  I view "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010).  "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks, alterations, and citation omitted).

7

**DISCUSSION**

The motion for reconsideration is granted, and defendants are granted summary judgment in full.

**I. Defendants' Motion for Reconsideration Is Granted.**

The United States is entitled to summary judgment on plaintiff's FTCA claim.

"[A] district court must generally resolve material factual disputes and establish that it has federal constitutional jurisdiction . . . before deciding a case on the merits." *All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998); *id*. at 110 (O'Connor, J., concurring) ("[F]ederal courts should be certain of their jurisdiction before reaching the merits of a case."). Relying on this principle, the Court did not address the merits of plaintiff's FTCA claim after concluding that there was a genuine factual dispute as to whether jurisdiction was precluded under the discretionary-function exception. *See* Mem. & Order 13. But "in the unique context of the FTCA," where the United States is entitled to sovereign immunity unless a claim is cognizable under 28 U.S.C. § 1346(b)(1), "all elements of a meritorious claim are also jurisdictional." *Brownback*, 141 S. Ct. at 749; *see F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994); 28 U.S.C. § 2679(a). The United States is therefore correct that "the Court can and should address the Government's merits-based argument as a basis to resolve whether the Court has jurisdiction."[2] Mot. for Reconsideration 1.

The United States is entitled to summary judgment on the merits of plaintiff's FTCA claim. A claim is cognizable under Section 1346(b)(1) only when "the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission

---

[2] Plaintiff contends that the Court should not grant reconsideration because the Government did not raise this jurisdictional argument in its motion for summary judgment. *See* Mem. in Opp'n to Mot. for Reconsideration 3. But this Court is required to address jurisdictional defects even if they are not raised by the parties. *Steel Co.*, 523 U.S. at 93.

occurred." 28 U.S.C. § 1346(b)(1); *see Brownback*, 141 S. Ct. at 746. "Under New York law, for a prisoner to recover for negligence for failure to protect him from another inmate's assault, he must demonstrate that the prison officials failed to provide adequate supervision to prevent that which was 'reasonably foreseeable.'" *Gjini v. United States*, No. 16-CV-3707 (KMK), 2019 WL 498350, at *16 (S.D.N.Y. Feb. 8, 2019) (quoting *Smith v. Chief Exec. Officer*, No. 00-CV-2521 (DC), 2001 WL 1035136, at *6 (S.D.N.Y. Sept. 7, 2001)); *see Sanchez v. New York*, 784 N.E.2d 675, 678 (N.Y. 2002); *Qin Chen v. United States*, 494 F. App'x 108, 109 (2d Cir. 2012). Foreseeability may be established through evidence that (1) the State knew or should have known that the victim was at risk of being assaulted and yet failed to provide the victim with reasonable protection; (2) the State knew or should have known that the assailant was prone to perpetrating such an assault and the State did not take precautionary measures; or (3) the State had ample notice and opportunity to intervene, but did not act. *See Sanchez*, 784 N.E.2d at 677–78; *Morgan v. City of New York*, No. 12-CV-282 (ALC), 2014 WL 3952917, at *2 (S.D.N.Y. Aug. 12, 2014).

Plaintiff has not put forward evidence from which a reasonable jury could find that Inmate A's attack on him was foreseeable to the United States. Plaintiff has not suggested prison officials had reason to think plaintiff was at particular risk of being assaulted, or that prison officials had ample notice and opportunity to intervene in a brewing conflict between plaintiff and Inmate A. *See Sanchez*, 784 N.E.2d at 677–78. To the contrary, before the alleged assault, plaintiff and Inmate A had not "ha[d] any physical or verbal fights," "Inmate A never threatened Plaintiff and Plaintiff never threatened Inmate A," and "Plaintiff never made any complaints about Inmate A." R. 56.1 Statement ¶¶ 7–9. Indeed, plaintiff acknowledges that he was surprised by the "unprovoked attack." *Id*. at ¶ 4.

9

Further, plaintiff has not presented evidence from which a reasonable jury could find that prison officials should have known that Inmate A was prone to perpetrating such an assault. *See Sanchez*, 784 N.E.2d at 677–78; Pl.'s Mem in Opp'n 9–11. A lengthy rap sheet of unprovoked attacks may make it foreseeable that an inmate will commit such attacks again. *See, e.g.*, *Littlejohn v. State*, 630 N.Y.S.2d 407, 408 (App. Div. 1995) (finding that an assault was foreseeable when the assailant "was allowed to continue to mingle among inmates . . . despite his having perpetrated seven other assaults under similar circumstances"); *Rodriguez v. City of New York*, 834 N.Y.S.2d 10, 11–12 (App. Div. 2007) (finding that an assault was foreseeable when the attacker "was a known dangerous inmate" with a "well-documented propensity for violence" "who had previously injured others at the detention center"); *cf. Hann v. State*, 521 N.Y.S.2d 973, 975, 977 (Ct. Cl. 1987) (stating that an inmate's "record of assaultive behavior," including unprovoked attacks, would have justified finding that an attack was foreseeable if considered in isolation, but could not do so in the case at hand because "the potentially assaultive inmate had received psychiatric treatment" after the prior assaults "and been released [from the mental hospital] as needing no further hospital treatment").

But plaintiff points to no decision finding an attack foreseeable because of a single prior act of violence against another inmate. Indeed, the Third Department of the Appellate Division affirmed a trial determination that an attack was *not* foreseeable even though the assailant "had been the subject of 11 or 12 misbehavior reports," including one of "threatening a guard" and one of "punching another inmate after a shoving incident in the mess hall line," when the assailant's other misbehavior reports "concerned minor nonviolent violations" and there was "no evidence of bad feelings between claimant and" the assailant. *Dizak v. State*, 508 N.Y.S.2d 290, 292 (App. Div. 1986). Here, over a ten year period, Inmate A had been accused of attacking another inmate

10

on only one prior occasion—the fight between Inmate A and Inmate V. This is not the type of record based on which New York courts have found foreseeability.

Nor could a jury reasonably find that prison officials should have foreseen Inmate A's unprovoked attack based on the allegation that Inmate A had performed nonconsensual oral sex on his former cellmate, Inmate V, while the cellmate was sleeping. While that allegation is certainly disturbing, the duty relevant to a negligence claim is "defined by the risk of harm reasonably to be perceived" based on the information known to the defendant. *Sanchez*, 784 N.E.2d at 678. "[T]he precise manner in which the harm occurred need not be foreseeable," but "liability does not attach unless the harm is within the class of reasonably foreseeable hazards that the duty exists to prevent." *Ibid.* Even if prison officials should have foreseen based on this accusation that Inmate A would engage in sexual misconduct, Inmate V's allegation did not make it foreseeable that Inmate A would commit a violent, unprovoked attack on plaintiff.

Relatedly, no reasonable jury could find the assault on plaintiff foreseeable based on evidence that prison officials "deviat[ed] from BOP's own protocols." Pl.'s Mem. in Opp'n to Mot. for Summ. J. ("Mem. in Opp'n") 11 (Dkt. #65-1). In general, a plaintiff may establish "knowledge of risks to a class of inmates . . . from [the institution's] own policies and practices designed to address such risks." *Sanchez,* 784 N.E.2d at 679. Thus, for instance, a jury could find that an inmate assault was foreseeable when prison regulations "required that [a security post officer] maintain constant contact with the inmates and consistently monitor inmate behavior for the very purpose of preventing inmate-on-inmate assaults," and prison guards had breached those rules, because the prison's having "identified the appropriate response to a risk of assaultive conduct" foreclosed a claim that "it was unforeseeable as a matter of law that this type of conduct would occur." *Id.* at 680.

11

But plaintiff has not put forward evidence from which a reasonable jury could infer that the BOP deviated from a policy designed to prevent unprovoked attacks like the one that plaintiff suffered. Plaintiff seeks to establish that BOP did so by arguing that BOP policies do not permit inmates under investigation to be transferred from N-1 into general-population housing. *See* Pl.'s Mem. in Opp'n 9–11. But plaintiff identifies no evidence that such a policy exists. Instead, plaintiff attempts to establish this policy by relying upon a chain of inferences that (1) "placement of an inmate into Unit" N-1 "qualifies as placement into" a special housing unit, or "SHU"; (2) "inmates placed into SHU include those on Administrative Detention status," (3) "Administrative Detention Status . . . removes [inmates] from the general population when necessary to ensure the safety, security, and orderly operation of correctional facilities, or protect the public," and (4) inmates must be kept in administrative detention status "until the reasons for placement no longer exist." *Id*. at 10–11.

Plaintiff's argument fails for two independent reasons. First, no reasonable jury could conclude that N-1 is a segregated housing unit. Lt. Greer testified unequivocally that N-1 is "not a SHU," Greer Dep. 77:12–25, and the BOP stated in a written deposition response that "Unit N-1 [is not] a SHU" and that "Unit N-1 or any part of N-1 [did not] function as a SHU," Written Dep. Resp. ¶¶ 15–16; *see* Decl. of Matthew J. Modafferi, Ex. G ¶ 85 (Dkt. #123-9) (BOP stating that a policy requiring investigations to be completed within 30 days did not apply to the Inmate A's investigation because "the 30-day requirement is only for inmates housed in SHU for the pendency of the investigation"). The only evidence that plaintiff identifies in challenging these assertions is Inmate A's BOP housing record, *see* R. 56.1 Statement ¶ 13, but that document does not address whether N-1 is an SHU, *see* Housing Record 1. Second, and independently, there is no genuine dispute that Inmate A was not under administrative detention until *after* he threw hot water on

12

plaintiff. On the topic of whether Inmate A was under administrative detention, both parties cite only Inmate A's housing record, *see* R. 56.1 Statement ¶ 13, which notes that Inmate A was under administrative detention between May 22, 2018 and June 5, 2018, but not before, *see* Housing Record 1. Accordingly, no reasonable jury could find that the assault on plaintiff was foreseeable based on evidence that Inmate A was placed into N-1 or that he was transferred from N-1 to general-population housing before the investigation concluded.

Because plaintiff has not put forward evidence from which a jury could find that Inmate A's attack on plaintiff was a foreseeable consequence of negligent conduct, plaintiff has not put forward evidence from which a jury could find the United States liable for negligence under New York law. Accordingly, this Court lacks subject-matter jurisdiction over plaintiff's claim under the FTCA. *See* 28 U.S.C. § 1346(b)(1); *Brownback*, 141 S. Ct. at 749.

## II. Leave to Amend Is Denied.

Plaintiff's request for leave to amend the complaint is denied. Under Federal Rule of Civil Procedure 15, "[a] district court has discretion to deny leave [to amend] for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *see AEP Energy Servs. Gas Holdings Co. v. Bank of America, N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (analyzing under Rule 15 a motion to amend the complaint made in opposing summary judgment).

Here, plaintiff sought leave to amend in responding to defendants' motion for reconsideration, but the amendment that plaintiff has proposed would be futile. Plaintiff seeks leave to add to the complaint "a single paragraph which addresses the sixth element—that private actors can be liable to the claimant in accordance with the law of the place where the act or omission occurred—specifically pursuant to 42 U.S.C. § 1983 and New York State tort laws

13

governing ordinary negligence." Mem. in Opp'n to Mot. for Reconsideration 4–5 (punctuation altered). But the defect in plaintiff's FTCA claim is not that the complaint did not adequately plead the principle that FTCA liability can be found when a private party would be liable for negligence under New York law, but rather that, as explained above, plaintiff has not put forward evidence from which a jury could make that finding here. Thus, it would be futile for plaintiff to amend the complaint to set out the relevant legal principles regarding FTCA liability for negligence.

Similarly, it would be futile for plaintiff to amend the complaint to plead the principle that FTCA liability may exist when the United States, if a private person, would be liable pursuant to Section 1983. *See* Mem. in Opp'n to Mot. for Reconsideration 4–5. That is not an accurate statement of the law, because "a § 1983 claim cannot be brought against the United States or federal actors, nor can such a claim form the basis for an FTCA claim against the United States." *James v. City of Rochester*, --- F. Supp. 3d ----, 2023 WL 3356931, at *9 (W.D.N.Y. 2023); *see F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994) ("[T]he United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims.").

## CONCLUSION

The motion for reconsideration is granted, and defendants' motion for summary judgment is granted in full.

SO ORDERED.

                                                    /s/ Rachel Kovner
                                                    RACHEL P. KOVNER
                                                    United States District Judge

Dated:       September 30, 2023
               Brooklyn, New York